IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In Re: <br> SEVEN SEAS PETROLEUM, INC. <br><br> Debtor. | Case No. 02-45206-H2-11 <br> Adversary Proceeding No. 04-3577 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., ML CBO IV (CAYMAN) LTD., PAMCO CAYMAN, LTD., PAM CAPITAL FUNDING, L.P., FAMCO VALUE INCOME PARTNERS, L.P., and FAMCO OFFSHORE LTD., <br><br> Appellants, <br><br> v. <br><br> SEVEN SEAS PETROLEUM, INC., <br><br> Appellee. | CIVIL ACTION NO. H-05-1104 |

## MEMORANDUM OPINION AND ORDER

Pending before the court is an appeal that challenges a bankruptcy court's order of injunction that halted the prosecution of a case in the district court of Harris County. The Bankruptcy Court ordered a preliminary injunction on August 6, 2004. (Bk. Doc. 26 in Adv. Proc. 04-3577).[1] On February 23, 2005, the Bankruptcy Court issued its "Memorandum Opinion, Findings and Conclusions in Support of Separate Orders Denying Remand, Denying Abstention, Denying Amendment of Preliminary Injunction and Dismissing Chesapeake Energy Corp." (Bk. Doc. 39 in Adv. Proc. 04-3577 & Bk. Doc. 37 in Adv. Proc. 04-3370[2]) (hereinafter "Memorandum

---

[1] "Bk. Doc. __ in Adv. Proc. 04-3577" refers to docket entries in adversary proceeding 04-3577, initiated by Seven Seas to enjoin Appellants' state suit.

[2] "Bk. Doc. __ in Adv. Proc. 04-3370" refers to docket entries in adversary proceeding 04-3370, initiated by Chesapeake Energy Corp's removal of certain state claims against it. The Bankruptcy Court's Memorandum Opinion was filed in both adversary proceedings with separate corresponding orders. There is a separate appeal pending before the court concerning the Bankruptcy Court's order denying remand and dismissing Chesapeake Energy Corp. as a defendant. *See Highland Capital Mgm't, L.P., et al. v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, Civil Action No. H-05-1073, United States District Court for the Southern District of Texas.

Opinion"). By separate order, the Bankruptcy Court denied modification of the preliminary injunction. (Bk. Doc. 40 in Adv. Proc. 04-3577). This appeal followed.

The Appellants are Highland Capital Management, L.P. ("Highland"), ML CBO IV (Cayman) Ltd. ("ML CBO IV"), PamCo Cayman Limited ("PamCo"), Pam Capital Funding, L.P. ("Pam Capital"), Famco Value Income Partners, L.P. ("Famco Value"), and Famco Offshore Ltd. ("Famco Offshore") (collectively "Appellants" or "Bondholders"). Appellee is Seven Seas Petroleum, Inc. ("Seven Seas"), the debtor in the bankruptcy proceeding below. The Trustee for Seven Seas is Ben Floyd (hereafter "Floyd" or "Trustee").

## I. BACKGROUND AND RELEVANT FACTS

### A. The Search for Oil that Ended in Bankruptcy

Seven Seas explores and develops oil and gas properties, and the company's most significant asset is the oil reserves in the Guaduas Oil Field, located in Columbia.[3] Initially successful, Seven Seas began trading on the American Stock Exchange and hired geologist Ryder Scott Company ("Ryder Scott") to provide reservoir valuations required for SEC reporting. Based on Ryder Scott's valuations of the "proved reserves,"[4] Appellants purchased millions of dollars in bonds, the Unsecured Notes, between January 1999 and April 2002.

In 2002, Seven Seas decided to explore for more oil and mortgaged almost all its assets to fund that exploration. It issued Chesapeake and Robert Hefner III ("Hefner"), the then chairman and CEO of Seven Seas, the Secured Notes, which were senior to the Unsecured Notes. The oil prospect failed, and in August 2002, Ryder Scott issued a revised "proved reserves" statement that substantially reduced the estimated value of the reserves.

---

[3] The underlying facts of this appeal are predominately undisputed.

[4] "Proved oil and gas reserves are the estimated quantities of crude oil, natural gas, and natural gas liquids which geological and engineering data demonstrate with reasonable certainty to be recoverable in future years from known reservoirs under existing economic and operating conditions, i.e., prices and costs as of the date the estimate is made." 17 C.F.R. § 210.4-10(a)(2).

On December 20, 2002, the Bondholders, along with other unsecured creditors, filed an involuntary bankruptcy petition against Seven Seas under Chapter 7 of the Bankruptcy Code. (Bk. Doc. 1).[5]  On January 13, 2003, Seven Seas moved to convert the petition into a reorganization under Chapter 11 and moved to appoint a trustee. (Bk. Docs. 12 & 15).  The next day, the Bankruptcy Court granted both motions, and Floyd was appointed Trustee for Seven Seas. (Bk. Docs. 21 & 25).

### B. Chesapeake's Release & The D&O Litigation

During the course of the bankruptcy proceedings, the Trustee filed a complaint against Seven Seas' secured lenders, including Chesapeake. (Bk. Doc. 129).[6]  The complaint alleged tortious interference, recharacterization, equitable subordination, interference with and/or breach of fiduciary duty, turnover of funds, preferential transfer and fraudulent transfer.  *Id.* Subsequently, Hefner, as well as other directors and officers, were added to the complaint. Trustee's 1st Am. Adv. Compl. (Bk. Doc. 12 in Adv. Proc. 03-3532).  The Trustee asserted claims for breach of the duty of care not only to Seven Seas but also to the general creditors, who were allegedly owed a duty of care by the directors "[b]ecause [Seven Seas] was either insolvent or of doubtful solvency . . .[such that] the interests of [Seven Seas] coincided with the interest of its creditors . . ." *Id.* ¶ 30.  The Trustee also asserted claims for breach of the duty of care (*id.* ¶ 33) and breach of fiduciary duty (*id* ¶ 35, 37).  In alleging the breach of fiduciary duty claim, the Trustee included a duty to the creditors because of Seven Seas' actual or likely insolvency.  *Id.* ¶ 36.

On August 2, 2003, the Trustee filed the Chapter 11 Trustee's Second Amended Plan (the "Plan").  The Plan included terms of a comprehensive settlement and mutual release agreement of the bankruptcy estate's claims against Chesapeake and certain other secured lenders.

---

[5] "Bk. Doc. ___" refers to docket entries in the main Seven Seas bankruptcy proceedings, Cause No. 02-45206, in the United States Bankruptcy Court for the Southern District of Texas.

[6] *See also* Trustee's Original Adv. Compl. (Bk. Doc. 1 in Adv. Proc. 03-3532). "Bk. Doc. ___ in Adv. Proc. 03-3532" refers to docket entries in the adversary proceeding brought by the Trustee for all of Seven Seas' (and its creditors') causes of action relating to the forced bankruptcy.

Plan Art. 8 (Bk. Doc. 220); *see also* R. 311-16. The Plan expressly excluded estate claims against several named parties, one of whom was Hefner. Plan §§ 8.2(k) & (*l*) (R. 315-16). Two days later, the Bankruptcy Court entered an order confirming the Plan. *See* Confirmation Order (Bk. Doc. 223). The Confirmation Order approved the settlement and release as set forth in Article 8 of the Plan and appointed Floyd as Seven Seas' "Sole Officer," exclusively authorized to distribute Seven Seas' assets in accordance with the Plan. *Id.* ¶¶ 3, 10. The Order also provided, in relevant part:

> <u>Injunction-Discharged Debts</u>. The commencement or continuation of any action, or the employment of process with respect to any debt discharged hereunder, or an act to collect, recover or offset any debt discharged hereunder other than in the manner provided in the Plan, as a personal liability of the Debtor or property of the Estate be, and is hereby, forever enjoined.

*Id.* ¶ 5.

After the Plan's confirmation, Seven Seas, through Hefner, moved to withdraw the reference to the District Court. Upon recommendation, this court ordered the reference withdrawn on January 6, 2004 (Doc. 4 in H-03-5693), and the Trustee's case against the directors and officers proceeded thereafter in this court (hereafter the "D&O Litigation). The D&O Litigation remains pending.

    C.  <u>Bondholder's Claims in State Court</u>

Shortly after Seven Seas was forced into bankruptcy, Appellants filed a state court petition alleging negligent misrepresentation and fraud against Ryder Scott. After the Plan was confirmed, the Bondholders amended their petition, naming Chesapeake and Hefner as defendants and asserting additional claims under state law.

In their petition, the Appellants alleged that they purchased and held various amounts of the Unsecured Notes because they believed the reserve estimates that Ryder Scott made and that Seven Seas included in the Form 10-K disclosures. *See* Bondholders' 2nd Am. Compl. ¶¶ 29-32 (Doc. 6 Ex. G). Famco Value and Famco Offshore claim they relied on the 10-K forms filed by Seven Seas on March 31, 1998, March 31, 1999, and March 31, 2000, when they purchased Unsecured Notes between January 14, 1999 and June 19, 2000. *Id.* at ¶ 29. PamCo

Cayman, Pam Capital, and ML CBO IV assert they relied on the 10-K form filed by Seven Seas at the end of 2000 when they purchased unsecured notes between January 9, 2002 and April 2, 2002. *Id*. ¶ 30. PamCo and Pam Capital allege that they relied on 10-K form filed by Seven Seas on April 16, 2002, describing the activities of Seven Seas in 2001, when they purchased additional unsecured notes on April 18, 2002. *Id*. ¶ 32. Highland did not purchase any Unsecured Notes itself, but it is the fund manager for PamCo, Pam Capital, and ML CBO IV. *See id*. ¶ 4.

The Appellants separated their claims against Ryder Scott, Chesapeake, and Hefner into five separate counts. The first three counts were against Ryder Scott exclusively. The first count, alleging negligent misrepresentation, argued that Ryder Scott had negligently overestimated the oil reserves that Seven Seas possessed. *Id*. ¶¶ 37-44. The second count alleged common law fraud, claiming that Ryder Scott's overestimation of the oil reserves was not only negligent but also fraudulent. *Id*. ¶¶ 45-50. The third count alleged "civil liability as an 'aider' under Art. 581-33(f)(2) of Texas Revised Civil Statutes" and argued that "Ryder Scott is civilly liable as an aider of fraud in the sale of a security[.]" Id. at 17, 53. The fourth count ("Count 4") only implicated Chesapeake and Hefner and complained of "conspiracy to defraud" whereby Chesapeake, Hefner, and Seven Seas conspired to defraud the holders of the Unsecured Notes by (1) "issuing and purchasing the Secured Notes . . . in order to decrease the assets available to investors in the Notes; and (2) "employing the material misrepresentations and/or omissions contained in Ryder Scott's reserve reports in order to induce potential investors and existing investors in Seven Seas Notes, including [Appellants], to either acquire interests in such Notes or to refrain from selling interests in such Notes." *Id*. ¶ 60. Count Four also argued that "Chesapeake Energy and Hefner knew that the misrepresentations and/or omissions contained in Ryder Scott's reserve estimates were false or had been made with reckless disregard as to their truth." *Id*. The fifth count ("Count Five") alleged "aiding and abetting fraud" against Chesapeake, Hefner, and Ryder Scott and argued that all three were "liable for all damages caused by the aforementioned fraudulent schemes because each of these Defendants was aware the conduct by Seven Seas

constituted a breach of duty and gave substantial assistance or encouragement to Seven Seas to continue with the scheme." *Id.* ¶ 63.

### D. The Chesapeake Removal & Dismissal

Chesapeake removed the Bondholders state claims against to the United States District Court in the Southern District of Texas, and the claims were referred to the Bankruptcy Court. *See* Order Granting Removing Def.'s Mot. to Refer (Bk. Doc. 1 in Adv. Proc. 04-3370). On May 10, 2004, Chesapeake filed its Motion to Implement and Enforce Plan of Reorganization in the main bankruptcy proceeding, seeking dismissal of the Bondholder's claims (conspiracy and aiding and abetting) against it and arguing that because these claims were "general and derivative in nature, they belong solely to the Debtor's bankruptcy estate and [the Bondholder's] actions [were] nothing more than an attempt to control this estate property to seek an impermissible recovery." Mot. to Enforce Plan ¶ 30 (Bk. Doc. 302). Appellants filed their response in opposition (Bk. Doc. 312), and Seven Seas, through Floyd, filed a response in support (Bk. Doc. 318), arguing that the same reasoning applied to Hefner. Hefner did not, however, remove the Bondholder's state petition against him. The Bankruptcy Court consolidated the Motion to Enforce Plan with the motions to remand and dismiss in Adversary Proceeding 04-3370. (Bk. Doc. 320). The parties continued to brief the issues in the adversary proceeding. On October 29, 2004, the Bankruptcy Court held a consolidated hearing on the motions.[7]

The Bankruptcy Court ultimately agreed with Chesapeake and Seven Seas and denied both the Bondholder's motion to remand the adversary proceeding and dismissed Chesapeake as a defendant in accordance with the agreed settlement and mutual release. Order Den. Remand and Final J. Dismiss. Claims Against Chesapeake (Bk. Docs. 39 & 38 in Adv. Proc. 04-3370). In its Memorandum Opinion, the Bankruptcy Court concluded that only the Seven Seas' bankruptcy estate had the capacity to pursue and recover the damages suffered by the Bondholders in reliance on the misrepresentations of Seven Seas' proved oil reserves. The

---

[7] The hearing also concerned Appellants' motion for reconsideration of the preliminary injunction issued with respect to the claims against Hefner, which the court will turn to momentarily.

Bondholders appealed, and that appeal is pending before this court in Civil Action No. H-05-1073. The court will address the Chesapeake appeal by separate opinion and order.

### E. The Seven Seas Injunction

As previously noted, Hefner did not join in Chesapeake's removal action. Rather, on June 8, 2004, Hefner filed a motion for summary judgment asserting that the Bondholders lacked standing to bring claims against him because their causes of action belonged exclusively to the Seven Seas' bankruptcy estate. Ryder Scott joined in Hefner's motion for summary judgment.

On July 26, 2004, Seven Seas initiated an adversary proceeding, 04-3577, against the Bondholders by filing an injunction complaint, which sought to enjoin the state court proceeding against Hefner. Inj. Compl. (Bk. Doc. 1 in Adv. Proc. 04-3577). Seven Seas argued that Appellants' conspiracy to defraud (Count 4) and aiding and abetting (Count 5) claims against Hefner were property of the bankruptcy estate; but, if the Bankruptcy Court determined otherwise, then Seven Seas sought a preliminary stay of Counts 4 and 5 against Hefner. *Id.* ¶¶ 12-13. Citing authority from the 7th Circuit,[8] Seven Seas supported its request for a preliminary injunction by arguing that Appellants' state law claims against Hefner were "so closely related to the estate and could result in harm to the estate's other creditors if they [were] allowed to proceed." *Id.* ¶ 13. On July 27th, Seven Seas filed an emergency motion (Bk. Doc. 2 in Adv. Proc. 04-3577) for an order setting the preliminary injunction hearing with the hearing on the consolidated matters, i.e., the Chesapeake Adversary, which was set on August 5, 2004. Over Appellants' objections, the Bankruptcy Court granted the expedited setting. Subsequently, Appellants filed their motion to dismiss for lack of subject matter jurisdiction. Mot. to Dismiss (Bk. Doc. 18 in Adv. Proc. 04-3577).

After holding an evidentiary hearing, the Bankruptcy Court granted the preliminary injunction, finding (1) that it had jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334 and

---

[8] *See Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1999); *Megliola v. Maxwell*, 293 B.R. 443 (N.D. Ill. 2003).

157(b)(2)(A) and (O), and 11 U.S.C. 105; (2) that Seven Seas was likely to prevail on the merits (on its claim for a preliminary injunction) because (i) the claims against Hefner were sufficiently related to the D&O Litigation, (ii) the claims related to the same money for the same bad acts, and (iii) Seven Seas was entitled to the "first opportunity to recover on its claims against Hefner on behalf of all creditors of the [bankruptcy] estate. . .;" (3) that Seven Seas would be irreparably harmed by the possible reduction of funds if both parties were allowed to proceed independently with their claims against Hefner; and (4) that the Appellants would not be harmed by the injunction because, as creditors of Seven Seas, the Appellants stood to gain from Seven Seas' pursuit of Hefner and because the court would "forthwith set a hearing on final adjudication of who may proceed." *See* Prelim. Inj. (Bk. Doc. 26 in Adv. Proc. 04-3577). The Bondholders filed a motion to reconsider (Bk. Doc. 31 in Adv. Proc. 04-3577), reurging that the Bankruptcy Court lacked jurisdiction to issue the injunction and that Seven Seas failed to prove irreparable harm.

The motion for reconsideration was argued at the October 29th consolidated hearing. Thereafter, the Bankruptcy Court denied amendment of the preliminary injunction (Bk. Doc. 40 in Adv. Proc. 04-3577) in accordance with its Memorandum Opinion, which found that the conspiracy and aiding and abetting counts against Hefner in the state court proceeding were the property of Seven Seas. The appeal at bar challenges the Bankruptcy Court's findings regarding the injunction of the Appellants' state court action against Hefner.

## II.  LEGAL STANDARDS

### A.  General Bankruptcy Review

This court exercises jurisdiction over the pending appeal from the Bankruptcy Court's pursuant to 28 U.S.C. §158(a). An appeal from a bankruptcy court to a district court is "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. §158(c)(2). Thus, this court applies the same standard of review that a circuit court would employ. *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989). Specifically, the court reviews findings of fact by the Bankruptcy Court under the clearly erroneous standard and reviews issues of law and mixed questions of law and fact *de novo*.

*Universal Seismic Assocs. Inc. v. Harris County (In re Universal Seismic Assocs., Inc.)*, 288 F.3d 205, 207 (5th Cir. 2002). Moreover, the court may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 245 (5th Cir. 2006) (citing *Bustamante v. Cueva (In re Cueva)*, 371 F.3d 232, 236 (5th Cir.2004) (internal quotations omitted)).

        B.     Causes of Action Belonging to the Bankruptcy Estate

The term 'property of the estate' includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.' " *In re Educators Group Health Trust*, 25 F.3d 1281, 1283 (5th Cir.1994) (citing 11 U.S.C. § 541(a)(1) (1988)). This interest includes causes of action. *Id*. In determining whether a cause of action is property of the estate, a court must consider whether, under state law, the debtor could have asserted the action "as of the commencement of the case." *Id*. at 1284. To assist in that determination, courts also consider whether the injury alleged is direct or derivative in nature. *Id*. In the context of creditor claims, the Fifth Circuit explained:

> If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.

*Id*. (internal citations omitted). Moreover, whether a "defendant may have a valid defense on the merits of a claim brought by the debtor goes to the resolution of the claim, and not to the ability of the debtor to assert the claim." *Id*. at 1286.

### III. ANALYSIS

In appealing the preliminary injunction, the parties dispute (1) whether the Bankruptcy Court had subject matter jurisdiction to enjoin the Bondholders' state court proceedings; (2) whether it erred as a matter of law in granting the injunction; and (3) whether the

Bankruptcy Court provided the Bondholders with a fair and adequate opportunity to be heard on the matter. The court addresses each issue in turn.

> 1. Whether the Bankruptcy Court had subject matter jurisdiction to enjoin the state court proceedings against Hefner.

Appellants argued that the Bankruptcy Court lacked subject matter jurisdiction (1) because the reorganization plan had already been affirmed and (2) because the court had not initially determined whether the insurance policy potentially covering Hefner in the D&O Litigation (hereafter the "D&O Policy") was estate property. *See* Hr'g Tr. 87-90, August 5, 2004 (Doc. 8 R. 135-291). Seven Seas argued that "the asset of the estate that [it was] seeking to preserve the value of . . .[was] the D&O case," i.e., the D&O Litigation. *Id.* at 90. The Bankruptcy Court agreed, and, in denying the Bondholders' motion to dismiss, ruled that "the right to sue the directors and the right to recover for the directors' misconduct, alleged misconduct, is property of the estate" and that "[o]n the face of the request for injunctive relief," the court had subject matter jurisdiction. *Id.* at 91. The court agrees that the Bankruptcy Court had subject matter jurisdiction.

After a debtor's reorganization plan has been confirmed, the breadth of the Bankruptcy Court's subject matter jurisdiction is contracted to cover only those "matters pertaining to the implementation or execution of the plan." *Bank of Louisiana v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001); *see also U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 304. In *Craig's Stores*, the Fifth Circuit concluded that the Bankruptcy Court lacked subject matter jurisdiction because (i) the claims dealt with post-confirmation relations between the parties, (ii) there was no adversarial claim between the parties as of the date of the reorganization, and (iii) there were "no facts or law deriving from the reorganization of the plan" necessary to the debtor's claims against the defendant. *Craig's Stores*, 266 F.3d at 391.

A United States Bankruptcy Judge for the Northern District of Texas, the Honorable Barbara J. Houser, examined the *Craig* factors as applied to an almost identical factual scenario

as the case at bar (including some of the very same Bondholders) and rejected the plaintiffs' argument that the court lacked post-confirmation jurisdiction:

> Because (i) the claims at issue in [the removed state court action] deal with the parties prepetition relationship with the Debtor; (ii) the same facts giving rise to the claims asserted in [the removed action] had given rise to pending litigation between the parties prior to confirmation of the Plan; (iii) the prosecution of the claims asserted in the . . .[Debtor's action] . . . is integral to implementation of the Plan; and (iv) the Plaintiffs' efforts to prosecute the . . . [fraud claims] . . . independently from those asserted by . . .the [Debtor] . . . would adversely impact the . . . [Debtor's] . . . duties under the Plan, this Court is satisfied that the *Craig's Stores* test for post-confirmation jurisdiction is satisfied.

*Pam Capital Funding, L.P. v. New NGC, Inc. (In re Kevco, Inc.)*, 309 B.R. 458, 468 (Bankr. N.D. Tex. 2004) (hereafter "*Pam Capital II*").[9] Utilizing Judge Houser's analysis in *Pam Capital II* (indeed, quoting the same), the Bankruptcy Court in the instant case concluded that it had post-confirmation jurisdiction over the preliminary injunction in order to determine whether Appellants' claims against Hefner belonged to the bankruptcy estate. *See* Memorandum Opinion 11-12. This court finds the *Pam Capital II* reasoning persuasive and concludes that the Bankruptcy Court correctly applied the *Craig's Stores* standard in its determination of subject matter jurisdiction over the preliminary injunction.

As in *Pam Capital II*, the claims against Hefner in both the D&O Litigation and the state law action deal with the parties' prepetition relationship. The claims involve the same nucleus of operative facts. The prosecution of the D&O Litigation is integral to the implementation of the Plan in that the Plan sets forth sharing ratios for the distribution of "Contingent Assets," which specifically includes "any proceeds from 'Litigation Claims,'" including the D&O Litigation. *See* Plan at § 1.1(z) and Art. 8.2 and Order Confirm. Plan (Bk. Docs. 220 & 223 respectively). Finally, the independent action against Hefner would adversely affect the Trustee's duties under the Plan, i.e., the Trustee's ability to pursue the "Litigation

---

[9] *Pam Capital II* was the second decision involving these Appellants' challenges to jurisdiction and removal. The first decision, hereafter *Pam Capital I*, is final, but unpublished. *See Pam Capital Funding, LP, v. Nat'l. Gypsum. Co.*, Case 01-40783-BJH, Adv. Pro. 02-4024-BJH (Bankr. N.D. Tex. June 25, 2002), *aff'd*, 113 Fed. Appx. 29, 30-31 (5th Cir. 2004), *cert. denied*, 544 U.S. 948 (2005).

Claims" and to recover from Hefner for the benefit of *all* the Seven Seas' creditors. Whether the D&O policy ultimately belongs to the estate or not, the implementation of the Plan stands to be affected. As Judge Houser notes,

> Either the proceeds of that policy were property of the estate during the pendency of the case, and therefore should be recoverable for the benefit of all creditors, or the proceeds belong to the director/officer defendants here, in which case the Plan Agent is competing with the Plaintiffs as an injured party for a portion of the proceeds. . . If the Plan Agent succeeds in proving its allegations in the Committee Action, all of the debtor's creditors have been injured. Recovery by the Plaintiffs here against any policy would necessarily reduce proceeds available for distribution under the Plan to all creditors.

*Pam Capital II*, 309 B.R. at 467 n.12. As such, the Bankruptcy Court rightly decided that it had post-confirmation jurisdiction under *Craig's Test* and, therefore, under 28 U.S.C. § 1334.

    2.  Whether the Bankruptcy Court erred in granting the preliminary injunction.

Appellants argue (1) that the D&O policy and/or its proceeds were not "property of the estate" and that, as a consequence, the Bankruptcy Court did not have the authority to issue a preliminary injunction under 11 U.S.C. § 105; and (2) that Seven Seas did not meet its evidentiary burden in proving all the elements necessary for injunctive relief. A reviewing court will uphold a Bankruptcy Court's decision to grant a preliminary injunction "unless grounded upon a clearly erroneous factual determination, an error of law, or an abuse of discretion." *Pipkin v. JVM Operating, L.C.*, 197 B.R. 47, 52 (E.D. Tex. 1996) (quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). The court concludes that the conspiracy and aiding and abetting claims against Hefner were "property of the estate" and that the Bankruptcy Court did not err as a matter of law in enjoining the Bondholders' state law suit against Hefner.

In denying the Bondholders' motion to reconsider the preliminary injunction, the Bankruptcy Court held that the claims against Hefner were property of the estate.[10] The

---

[10] Appellants argue that the court should not consider the Bankruptcy Court's holding that the claims against Hefner are property of the estate because it was "dicta" made in connection to its determination that remand was not appropriate on the Chesapeake Adversary. *See* Appellants' Reply Br. 1-3 (Doc. 11). The court disagrees. There is no evidence on the record that the Bondholders' objected to the consolidation of the matters for the October 29th hearing. Nor have they appealed the consolidation of the cases. Moreover the preliminary injunction portion of the opinion specifically references and incorporates the court's reasoning made throughout the Opinion. Therefore,

Bankruptcy Court traced the 5th Circuit precedent and fundamental bankruptcy principles to articulate the distinction between direct, personal claims that belong to the creditor and indirect, derivative claims that belong to the debtor's estate. Memorandum Opinion 4-9. It properly concluded that "whether a claim is property of the estate depends on the nature of the injury and whether the debtor could have raised the claim under state law as of the commencement of the case." *Id*. at 8. The Bankruptcy Court ultimately found that ["i]f Chesapeake and Hefner conspired to create claims with collateral rights senior to other creditors, then the harm is generalized to all creditors." *It*. The Bankruptcy Court further determined that "[n]ot only 'could have' the Debtor raised the claims against Chesapeake, and Hefner, the Debtor did raise those claims[]" and that, as a result, "the claims against Chesapeake and Hefner are property of the estate." *Id*. For the purposes of this appeal, the court is only considering whether the Bondholders' claims against Hefner were properly the property of the estate.[11]

The main dispute is whether the Bondholders' conspiracy to defraud (Count 4) and aiding and abetting fraud (Count 5) against Hefner allege direct harm to the Bondholders or derivative harm of Seven Seas. Distilled from Count 4 and 5 is Bondholders' basic contention that Hefner and others damaged the unsecured creditors when he schemed to maneuver himself in front of the unsecured creditors through the issuance of the Secured Notes. The court does not agree that this claim is for direct harm to the creditors: the fraudulent scheme, if proven, appears to derive ultimately from Hefner's breach of his fiduciary duties to Seven Seas and the resulting depletion of Seven Seas' assets. As such, the Bondholders' claims against Hefner are properly classified as derivative in nature and belong to the bankruptcy estate. Moreover, the court is persuaded by the recent decision in the Court of Appeals for the First District of Texas that affirmed the grant of summary judgment against the Bondholders for Counts 4 and 5 against Hefner and held that,

---

the Memorandum Opinion, in its totality, applies equally to both adversary proceedings (04-3370 (the Chesapeake Adversary) and 04-3577 (the Injunction Adversary)).

[11] The Bankruptcy Court's determination regarding Chesapeake is addressed by separate opinion and order because the Bondholders have instigated separate appeals on the two adversary proceedings.

> [T]he nature of the injury for which relief is sought against Hefner in state court, which can be described as the depletion of Seven Seas' assets to the detriment of [the Bondholders], as well as other creditors of Seven Seas, is derivative of Seven Seas' direct injury . . . [a] conclusion . . . supported by the fact that the [Trustee] in [the D&O Litigation] is effectively seeking, as a remedy for Hefner's alleged breach of his duties to Seven Seas and its creditors, to void the security interests held by Hefner, which [the Bondholders] allege in their state court lawsuit that Hefner created as part of his common plan to defraud them.

*Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 212 S.W.3d 522, 531 (Tex. App.–Houston [1st Dist.] 2006, no pet. hist.) (rehearing overruled Feb. 13, 2007). Finally, the Fifth Circuit, in affirming *Pam Capital I*, found that fraud claims brought by bondholders of debtor corporation were derivative because "the debtor could have brought the same claims as of the commencement of the bankruptcy proceeding and because the plaintiffs-appellants complain about an injury that is derivative of the debtors direct injury." *Pam Capital Funding LP v. Nat'l Gypsum Co. (In re Kevco Inc.)*, 113 Fed. Appx. 29, 31 (5th Cir. 2004) (per curiam), *cert. denied*, 544 U.S. 948 (2005). This is the only case addressing fraud claims brought by holders of bonds, and both the bankruptcy court and the Fifth Circuit concluded that the claims were property of the bankruptcy estate and could not be brought directly by the bondholders. *See Newby v. Enron Corp. (In re Enron Corp. Secs.)*, MDL-1446, 2007 U.S. Dist. LEXIS 17672 (S.D. Tex. March 12, 2007). The court agrees with this line of authority, and finds that the Bondholders' fraud claims were derivative in nature because they related to the depletion of the corporation's assets and to the corporation's ability to pay its creditors. Therefore the Bankruptcy Court properly concluded that the Bondholders' causes of action against Hefner were property of the estate and had the authority to enjoin the Bondholders' state suit.

Having concluded that the claims against Hefner belonged to the bankruptcy estate, the court need not address Appellants' argument concerning whether Seven Seas' meet its evidentiary burden in proving all the elements necessary for injunctive relief.

       3.      Whether the Bondholders had a fair opportunity to be heard.

Appellants argue that they were unfairly prejudiced by the short notice given to on the preliminary injunction hearing. Federal Rule of Civil Procedure 65, made applicable to the bankruptcy proceeding by Bankruptcy Rule 7065, mandates that "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Here, Appellants did have adequate notice and a fair opportunity to be heard. They had an opportunity to object to the expedited setting, which the Bankruptcy Court was well within its discretion to deny. They were able to file both a pre-hearing motion to dismiss and a post-hearing motion to reconsider. They attended the August 5th consolidated hearing and were able to present their arguments on why a preliminary injunction was inappropriate. Moreover, they were given several more months to prepare for the hearing on their motion to reconsider, held on October 29th. The court concludes that the Appellants were afforded ample time to present their opposition to the preliminary injunction, and reversal on this ground is without merit.

### IV. CONCLUSION

Accordingly, it is hereby

**ORDERED** that the Bankruptcy Court's decision to issue and its refusal to amend the preliminary injunction is **AFFIRMED**.

SIGNED at Houston, Texas this 30th day of April, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE